Alright, thank you very much. The next item on our docket is Schneider v. Cedar Ridge Health and Rehabilitation Center 5-25-0121. This is going to be both in person and Zoom and I believe there's a cross appeal. So we'll allow 15 minutes, 15 minutes and then 5-5 rebuttal. So appellant, are you ready? Sorry, the appellant is on screen. Yes, I'm ready, thank you. Alright, appellant are you ready as well? Yes. Alright, appellant you may begin and if you would please state your name. My name is Andrew Tate and I represent the plaintiff Barbara Schneider in this appeal. I want to thank the court for allowing me to appear remotely. I would much rather have been there in person. My wife is with our third child any day now and my office is based in Atlanta. So I do greatly appreciate allowing me to appear remotely today. Alright. May it please the court, this appeal arises from a final judgment that did two things. It dismissed plaintiff's claims with prejudice at the pleading stage and it denied defendant's motion to repeal arbitration. The first question is whether the trial court was permitted to end this case forever without a struggle, without trial and without allowing one substantive amendment. If the answer is no, the court was not allowed to do that. Then the second question is four, which is whether any revived claims must proceed in court or in arbitration. And so due to that sequencing, I'd like to begin with the dismissal and the denial of these amendments because that ruling determines whether any claims survives at all. And so this case was dismissed under sections 2, 615 and 2, 619. And as your honors know, at that stage, all well-observed allegations must be taken as true and all reasonable emphases drawn in plaintiff's favor. The trial court concluded that plaintiff could never allege an injury. But that conclusion defied the facts before the court. And before I get to the Nursing Home Care Act injury, I want to first address the other two claims and the injury that was alleged there. So there's an independent error, really three independent errors, that alone required a reversal. And that's with regards to the breach of contract claim, the Illinois Consumer Fraud and Substantive Taxes Act, and the unjust enrichment claims. So even if the court had questions about plaintiff's pled Nursing Home Care Act injury, the trial court dismissed these other three claims as well, seemingly based on a personal injury requirement that does not apply to this cause. The breach of contract requires economic harm. The income claim requires actual damages, such as overpayment or deprivation of value of the services received. And unjust enrichment requires an unjust retention of a benefit as an alternative to the breach of contract claim. And so plaintiff alleged that defendant charged residents for staffing and care that it knownly did not provide. And this is a classic benefit of the bargain injury. And so what I'm trying to tell the court is that the court can reverse dismissal those claims without even considering the plaintiff's personal income claims, the Nursing Home Care Act claims, which the groundsman should. But I just wanted to let the court know that these three claims, plaintiff's arguments, were not addressed in the court's dismissal. And so going to the Nursing Home Care Act injury, the Nursing Home Care Act expressly recognizes mental anguish as an actionable harm. And plaintiff alleged systemic intentional understaffing of defendant's facility, the place residents at continuous risk of harm, that actually materialized when my client was left sitting in front of an extra mat on several occasions. And at the pleading stage, that was sufficient. Importantly, the purpose of the complaint went even further and alleged more specific physical injuries and emotional injuries. Counselor, with respect to the First Amendment complaint, what paragraphs or paragraphs are the allegations involving the mental anguish? Thank you for asking that, Your Honor. The mental anguish is not specifically addressed in the complaint. And what was attached to the complaint was an IDPH understaffing citation where plaintiff is R01, resident one, in that complaint, which was sustained by IDPH. Plaintiff explained to the court that the plaintiff is R01 in that citation, which was attached to the complaint in the court briefing. But the court and opposing counsel was not clear to them, based on the way the complaint was written, that the plaintiff was R01. And so at the motion to dismiss hearing, plaintiff offered to amend the complaint to address the court's concerns about how the injury was pled. And the court did not respond to that request. Counselor, why was the plaintiff not specifically identified in the First Amendment complaint as R01? Did that have anything to do with the fact that the original pleading was trying to keep the plaintiff's identity anonymous? Did that have anything to do with that? Yes, Your Honor. My client and her family wanted to remain anonymous and not kind of put themselves out there at that point in time. And we explained to them that it was going to be important and required for them, under these circumstances, to use their names and put forward their names. However, I will say that the complaint associating Joe and R01, that could have been made more clear. And that's why plaintiff offered to amend the complaint after the dismissal hearing, recognizing the court's confusion versus understanding what plaintiff offered to amend. So the trial court, after hearing on the motion to dismiss, I believe asked counsel for the plaintiff specifically, have you alleged an injury here to your client? And I believe the response was, well, it was not clear, Your Honor. Exhibit 1 to the complaint identifies R01. R01 is my client, and I would be happy to amend to make that clearer if the court would like me to. Something to that effect. Now, was that in essence a motion for Lee to amend at that point or not? Yes, Your Honor. That is absolutely what plaintiff was intending to do. And as the castle, the Illinois Supreme Court decision recognizes an oral motion, an oral request to amend at a dismissal hearing, case applies to the motion to amend the complaint. And, of course, the interest of justice would be served by allowing that when my client clearly had an injury and was very willing to put that injury alleged much more clearly to the court. So this case would be adjudicated on merits. Thank you. And so I would also say that setting aside the pleadings, this case should never have been dismissed with prejudice. As I mentioned, requested amendment at the dismissal hearing, and then the court dismissed with prejudice anyway. It's not clear why the case was dismissed with prejudice when there is clearly more injury to be alleged. And after the dismissal, plaintiff filed a motion for reconsideration, requested in writing an amended complaint to be filed, filed a copy of the proposed amended complaint that explained the urinary tract infections that my client suffered as a result of sitting in her experiment on multiple occasions, which is the issue described in the understatement citation. And then also alleged more detailed emotional and mental anguish. And so this would have been plaintiff's first substantive amendment. The only other amendment to the complaint was to change the name to Joe to the names of my client and her guardian. And so there would have been no prejudice to the defendant had this amendment been allowed. There is no discovery yet. There would have been a trial. An amendment would have been the proper route here. And dismissal without prejudice. In addition, as I mentioned, the other plaintiffs should not have been dismissed based on any basis, but as the court did. And I'm asking for that to be reversed.  Counsel, I know you have time on rebuttal, but would you like to address the arbitration issue now? I'd be happy to. And so I think the most important threshold issue here is that my client, the plaintiff, never agreed to arbitrate. And that's a threshold issue for the court. So the plaintiff is an elderly nursing home resident. Her husband signed admission documents. Illinois courts consistently hold that spouses lack inherent authority to waive a resident's right to court. A resident's relative may sign admission documents under the Nursing Home Care Act, but Illinois courts do not allow a spouse without inherent or actual authority to sign away their spouse's right to a jury trial. And that is the position that the defendant took here, and that that was incorrect. And it's completely contradicted by Illinois precedent. And so that issue is a contract formation issue. And contract formation is an issue that is always before the court. It is not delegated anywhere else. If my client didn't sign anything, and her spouse had no authority to sign anything, and there's no evidence on record that he did, then there is no assent to that contract. And so, therefore, any question about delegation should not be an issue. The court had full authority and appropriate authority to address this contract formation issue. So counsel, if I could interrupt for a moment. So numerous cases have been cited by the parties with respect to this delegation clause issue. Do any of those cases involve this situation where the plaintiff, the party to be bound to the arbitration agreement, never signed it and did not have a guardian or agent under a power of attorney sign the agreement? Yes, Your Honor. And so I believe I'm answering your question correctly here. The Curto case is one of the cases that we cited. And this is where the court got it right and said, you know, that is what this case stands for. There are a couple other cases cited in our brief as well. But the authority to bind a resident to a resident's agreement under the Civil Care Act is totally separate from a spouse's ability to bind their spouse, the resident, to an arbitration agreement, waiving their constitutional right to a jury trial. And the trial court also denied arbitration on independent grounds, including that enforceability was not delegated, just like formation was not delegated to an arbitrator and found the agreement was unconscionable. And so for these reasons, I submit a dismissal of the prejudice to be reversed. The case should be remanded for amendment and further proceedings. And the denial of arbitration should be affirmed. I'm happy to answer any questions the court has. All right. Any questions? No questions. All right. Thank you. You'll have time for both. All right. Thank you, Your Honor. Counsel for rappelling? If you would, make sure you give your name, please. Good morning. My name is David Franklin, and I represent the defendant, Applee Cross Appellant in this matter, Cedar Ridge. The circuit court correctly dismissed this putative class action that alleged systematic understaffing at a nursing home because, in part, the plaintiff never plausibly alleged a concrete personal injury to the plaintiff sufficient to establish standing or state claims under the Nursing Home Care Act, the ICFA, unjust enrichment, or breach of contract. And even if they did and a claim survived, the court erred in refusing to compel arbitration pursuant to a signed arbitration. I'm already going to jump in if I can. Why not allow them to amend their complaint? Your Honor, they had 97 days from the date that we had a hearing to the date that the court issued its judgment. Obviously, Plaintiff's Counsel recognizes that the court had issues, and yet they failed to do so. There is no statutory right under Illinois law to leave to amend after a final judgment. The court entered a final judgment, and then, finally, they requested leave to amend. But did they not? As Justice Bollinger cited, the record or the transcript, did they not request orally? It's a good question, Your Honor, but, I mean, I have it right here. It says, Mr. Tate, I don't know if that was clear in the complaint. I go, it was not. Mr. Tate, okay, we're happy to amend the complaint if the court would like us to. There was nothing further on the request. May we? Easy way to rectify that. May we amend the complaint, Your Honor? More importantly, that this case was filed, I think, in 2023. This argument happened in December of 2024. The judgment came down in September of 2024. You know, there was multiple times after my pleadings were on file that plaintiffs could have recognized there might have been an issue with my understanding, with the court's understanding, of where the injury actually was, and yet they failed to do so. I know you cite case law that says that after final judgment it's not appropriate. Is there any case law that talks, essentially, that makes a lattice claim? Like, after a certain amount of time, you can't file a motion to amend. I mean, cases are amended quite frequently, and during the course of litigation, you agree, counsel? I agree that they are amended quite frequently, and they should be. They're liberally amended because that is what the statute permits. There is no statute to permit an amendment after a final judgment, however. So then it becomes an abuse of discretion at the trial court level. And, you know, one of you, all three of you, may disagree with the trial court on that abuse of discretion, but that's a tough burden for a plaintiff to overcome on appeal here. Again, I think that the sequence of events is more in defendant's favor here. My pleadings were on file, clearly indicating that we had issues, whether the plaintiff actually alleged a concrete injury that was traceable to the alleged understaffing. That was on file for numerous months. Then we had a hearing. Ninety-seven days passed. Finally, a judgment is entered, and they still wait 30 days to file a motion for leave to amend. If that's my case, I'm thinking the next day I've got at least a motion for leave to amend to try to rectify the issue. The counsel procedurally, however, whenever the trial court was the one asking specifically plaintiff's counsel at this hearing, have you alleged an injury to your client, and then plaintiff's counsel makes the statement that plaintiff's counsel made that we've discussed here and indicated they would be happy to amend. Now, at that stage, there was no final judgment. Should the court have exercised some discretion, applied to whatever factors to determine whether or not to allow that amendment at that stage? I don't think a trial court has any sua sponte duty or obligation to instruct, request, or demand that a plaintiff file an amended complaint. That is up to the plaintiff, and it is statutorily authorized for the plaintiff to request that leave. And I'm saying, assuming we construe what plaintiff's counsel said to the court, as I'm asking to amend, Judge, if you feel I haven't properly identified R1 as my client, I can clarify that for you. Assuming we construe that as a oral motion to amend, should the trial court have exercised discretion and applied the Loyola factors? If it was an oral motion, I think there would have to be some evidence of either, you know, acceptance of that motion or denial of that motion. There's nothing. It's silent. It's silence. And so I think for this court on appeal to presume that the court denied that motion and, therefore, plaintiff requested leave to amend before the final judgment, I think is not supported by the evidence. There's no indication. Silence is not an indication of deny, especially on something that is so liberally granted. Again, if plaintiff recognizes themselves that there's an issue with the pleadings, the next day they could have easily filed a motion for leave to amend and then we would have a rehearing on the amended petition, on the amended complaint. But that didn't happen here. They waited 97 days. They waited for a final judgment to issue. You know, so often defendants are the ones sitting on their hands, and here I think plaintiffs were sitting on their hands. And I don't think defendants or a defendant in this case should be harmed because of that. Now, plaintiff's counsel didn't talk about the NHCA claim, but I really do want to talk about that because I think it's the crux of the entire case. One, plaintiff led standing to bring any of their four causes of action. To circumvent this constitutional requirement of standing, plaintiff's lead argument in their complaint, in their briefing, is that the Nursing Home Care Act somehow lowers or eliminates the traditional Illinois pleading standards, such that plaintiff should have standing to pursue this unique legal claim. And they themselves, I think, called it a novel claim in their briefing. However, the Nursing Home Care Act creates a cause of action, not a pleading exemption. What plaintiff pled instead was a regulatory narrative, not a complaint. The complaint strings together statutory citations, generalized references to understaffing, and conclusory assertions of systematic wrongdoing, but never bridges the gap between the regulatory language and plaintiff's alleged injury. But remind me, counsel, and forgive me, this is a lengthy file, you have a number of cases. Isn't there an allowance under NHCA for class action lawsuits? There is, Your Honor. So doesn't that sort of beg the question that there would be a personal injury claim, essentially, as a result of the NHCA? So the NHCA still requires that you have, based off of a private cause of action, which is set forth in 601, which injures the resident, and then 602, actual damages. So plaintiff still has the burden of proving your general tort case, cause and effect, proximate cause, and that was not pleasure. There was, and as plaintiff conceded just now in argument, that it was not clearly stated the mental anguish in the complaint itself, the operable complaint. And I think it's also implicit, you know, by their request for leave to amend, is that they're admitting, effectively, in my mind, that it was not in the initial complaint. Effectively, you know, plaintiff's appeal is asking this court to do something quite consequential, to hold that unlicensed nursing homes are presumptively liable whenever a plaintiff invokes statutory language without factual specificity. The General Assembly did not do that, Illinois courts have not done that, and this court should not do it today. This is not a strict liability statute. Illinois pleading rules do not permit causation to be from inference alone. Traceability, the second prong of standing, requires factual allegations connecting the alleged understaffing to injury, not just the assertion that they both existed. Effectively, what I would argue, Your Honor, is that plaintiff's labeling or statement that there was understaffing here is a conclusion, not a fact. There is nothing that says that on the date, and even though it's not in the complaint, I'm going to use it here for a minute, even though plaintiffs sat in their excrement based off of the survey, there's no information that on that date plaintiff, the defendant, had a lack of nursing care per precedent per day. It's just a generalized they did not meet the requirements. And I think that if you're going to try to say that a nursing home has to provide a certain number of hours, then you should connect the injury that the plaintiff is claiming to that specific day and determine, did they actually have that, a sufficient nursing on that day. Do I get to take draw emphases in favor of the claim? You do, Your Honor, but I think before you do that, there's a prerequisite, which is a viable claim. You know, effectively, what plaintiff wants to do is use discovery as a fishing expedition. If pleading standards collapse like that, I think, at the discovery door, every licensed nursing facility would face open-ended litigation based solely on regulatory language. That is not normal law, and again, this is not a strict liability claim. This still requires the elements of a general tort. It's just a cause of action that is created by the Nursing Home Care Act. I do want to address plaintiff's three other causes of action. The first, the ICFA. The ICFA fails, I think, from the get-go for the simple reason that the ICFA requires deception. Not negligence, not regulatory noncompliance, not dissatisfaction, but deception. Plaintiff never pled a false statement made to the plaintiff intended to induce reliance, actually relied upon, and that caused damages. More importantly, I think that that information is not in the complaint, but Illinois law seems as a matter of law that professional facility negligence like this is not consumer fraud. That's what states that. And to separate the business enterprise from the care that these nursing homes are provided, I think, is a very difficult task. This is all part and parcel when you're providing care to elderly or sick or people that need rehabilitation. Additionally, plaintiff complains that they claimed economic damages under the ICFA, but the Lewis case from Illinois clearly says that Medicaid recipients, which is what they want their class to be, incur no economic injury because they are not financially responsible for the services rendered. So I don't know where the economic injury is under the ICFA. So not only do they fail as a matter of law, but I also think that they fail because the complaint under 615 does not include facts of deception. The next two, breach of contract and unjust enrichment. I'm having a hard time with that last statement. Are you telling me that no Medicaid recipient could then suffer an economic injury because they're not paying for the service? That's incorrect, I think, Your Honor, and I apologize for that. I think it was just poorly stated on my part. I'm saying under the ICFA, you end up in economic damage. And I'm saying, you know, when you're in a general medical malpractice case, it doesn't matter who paid your bill. But under the ICFA, I think it does. And the reason for that is that, you know, they're not incurring the economic damage. Medicaid is or the state is. And so I think there's an argument to be made. I should also say that the ICFA specifies statutory provisions of the Nursing Home Care Act that, if violated, constitute unlawful practice. And that is specifically stated in 815 IRS 302-2BBB. There's no similar provision for plaintiff's claim here. So I think the ICFA is clearly stating this is not supposed to be an ICF claim. In regards to the breach of contract, plaintiff effectively pleads generalized claim that the facility failed to provide promised levels of care. They don't cite to the contract. They don't cite to any violation of the contract, other than they didn't provide allegedly the certain levels of care. I don't think that's enough to survive a breach of contract claim. On Justin Richman, I will concede, Your Honor, this is my most difficult one. Now, I understand that plaintiff attempts to exclude all allegations related to the contract, because that's what he's required or that's what plaintiff is required to do. But I think that their exclusion is insufficient for two reasons. One, the NHCA claim is encompassed within the unjust enrichment claim. And the NHC presumes, based off a law, based off a statute, that there must be a contract. So it's hard for me to get over that fact that you can have an unjust enrichment claim under the NHCA when the NHCA requires a contract. The other thing I just wanted to touch on briefly, Your Honor, is the political question doctrine. So let's say that this court believes that they've stated a claim under 615 and that all causes of action should proceed. The trial court found that there was a political question doctrine here that removed all four counts. And I think that's fair. For the past 10 years, the state legislature has been dealing with nursing ratios. And just this past year, in 2025, four bills were filed in the General Assembly. Two of them, I believe, received hearing. And so they're trying to figure out what is the appropriate ratio, what are nursing homes able and permitted to do. I wanted to touch just briefly, and I should say, Conn, I can't stress enough, the case that I cited to you from the United States District Court for the District of Colorado, Conn, I think is directly on point and indicates why this case was properly dismissed. In regards to defendants' cross-appeal, this arbitration agreement, I think, is unambiguous and even more unambiguous than the issue in Rotin. In the Rotin decision from this court, even though it's unpublished, I think its persuasive authority clearly establishes that the court had only but one option, and that is to remove the matter to arbitration because of the clear and unmistakable delegation cost. Thank you. What about his argument that the spouse can't waive the other spouse's right to jury trial? And I try to address this in my brief, Your Honor, but ratification. Plaintiff herself had multiple options. One, there was a 60-day rescission period within the arbitration agreement. She was cognizant enough to appoint a prior attorney later on, but not cognizant enough to understand the rescission period. I find that contradictory. More importantly, she didn't try to defeat the arbitration provision at any time during her nine months, even though she was provided a guaranteed 60 days to do so. I think ratification, she stayed there. She received the services. Defendant received the services that were promised to them. I think ratification allows for her to be bound by this arbitration provision, the delegation cost that's included there. Any other questions? No. All right. You'll have time. Thank you very much. All right. Thank you. All right. All right, counsel, you have time for a vote. Thank you, Your Honor. Well, I just want to reiterate, as it happened on our briefing, that the plaintiff is not seeking some kind of new injury through the Nursing Home Care Act. The Nursing Home Care Act has been amended, and the plaintiff noticed that one of those amendments changed the definition of neglect and put forward that, what we call, untested argument about how that definition fits into the litigation framework. The trial court was, I think, maybe what led to, I don't want to speculate, but led to the dismissal. But that was, it's clear in the transcript, that was an issue that the court was particularly focused on. And so the plaintiff stated in the dismissal hearing that, as we discussed earlier today, that's addressing that theory of accepting or rejecting that theory, that a risk of harm is enough to state a claim under the Nursing Home Care Act, based on that recent amendment. Accepting or rejecting that theory is not necessary for this case to proceed on the merits. The court would have rejected that completely and said, no, I need a more specific injury. I need to be clear what the injury is here. The plaintiff heard that, and that is why an amendment was requested. And so, as it comes to the, Mr. Franklin discussed the hours of care and the dates of plaintiff's injuries, these are questions, these are really separate judgment arguments. You know, we're talking about a feeding standard, we're not talking about evidence that would be discovered, a discovery that adjudicated thereafter. And so the plaintiff did not need to go into that level of specificity in the feeding, with regards to the exact dates, that the hours fell short, the exact dates that plaintiff sat in her restroom and suffered various injuries. I'll also address, Mr. Franklin's argument about the ICFA claim. So, with regards to deception, the plaintiff did plead false, that there were false statements in the contract. So, as described in this briefing below, there is, and is dependent, attached to their briefing, the actual contract. That contract includes the resident's bill of rights, which tells residents, including my client, that the facility, that the company did not neglect or abuse her. And neglect is exactly what happened. And so, that was a false statement. And, of course, my client did rely on an apprehender, and that she was unfortunately brought there. And the complaint alleges how that neglect was not intentional, due to intentional homicide. And with respect to the injury of the ICFA claim, as plaintiff thoroughly briefed below, and the Lewis case does not address the MERS statute. The Medicaid estate recovery statute does not, does not say there's no economic injury for a Medicaid recipient. In fact, the MERS statute allows a state to recoup from a resident's estate after they die all monies that were paid by Medicaid on behalf of that recipient to a nursing home facility, such as the defendant's facility. And so, plaintiff clearly implied the damage was there. With regard to the political question doctrine, this is a long-studded issue. There is no political question. This is more of a law school exercise, I think, than a truly serious argument. And unfortunately, the trial court got this wrong. The EADS court, the Illinois Superior Court case, the EADS case, you know, over 25 years ago now, stated that litigation was to de-engineer reform under the Nursing Home Care Act. Plaintiff, like many plaintiffs before her, had engaged in litigation to enforce the Nursing Home Care Act as separate and part of any regulatory authority by the NACA. And with regard to the arbitration arguments, I'll say in my briefs and arguments before, there was no agreement by my client to arbitrate. All right. Any questions? Any further questions? No questions. All right. Thank you, counsel. All right. Rebecca? Thank you. Thank you, Your Honor. And I'm going to interrupt you from the get-go. You just referenced the EADS case and the political question doctrine. Can you address that, please? Your Honor, I think how the trial court came down here is that this is an inherently legislative and economic question that is reserved for the other two branches of government. What constitutes sufficient staffing at a nursing home, particularly before January 1, 2025, when the nursing standards or the nursing ratios went into effect? And that is when the statute actually became enforceable against nursing homes. I believe it would be imprudent for a court to hold this defendant liable for conduct that the legislature has determined that the IDPH cannot penalize them for, especially when the legal standard was in flux and continues to be in flux, I believe. Given the legislative context of these claims, this is precisely the type of political question that courts should avoid addressing. I don't think EADS supports anything more than the argument that there's elements to a political question doctrine. And I think that the trial court, in its judgment, clearly established that defendant met those elements. I wanted to address just briefly, Your Honor, Plaintiff claims that due to the amendments changing the definition of neglect in the NHCA, that therefore they have standing to pursue this claim. They said two cases in their briefs. One is Alden v. Lumpkin, and the other one is Mason. I remember Mason pretty well because they dealt with a nurse poking a resident, which I find absurd. But there was a true cause and effect, a fairly traceable cause and effect, for the injury, for the negligence to the injury. Second, Alden v. Lumpkin was talking about psychological abuse can constitute injury when there is observable harm. There has to be manifest, observable behavior changes. There's no evidence of that in the complaint for a psychological injury. So I don't think that the amendment to the NHCA supports Plaintiff's cause here, or Plaintiff's complaint here. I didn't address this too deeply, but I do want to go back to the Rotin decision and the arbitration. In the event that this court were to reverse the dismissal, I think that the court should also then reverse the trial court's denial of the arbitration agreement. I believe Rotin clearly establishes, and again, I believe that this arbitration agreement is unambiguous versus where Justice Cates indicated in her dissent in Rotin that maybe there's some ambiguity there. Yet the two other justices that wrote for the majority clearly indicated that there was some ambiguity. Nevertheless, Plaintiff obviously in this case raises procedural and substantive unconscionability issues. And I just wanted to address that partly because I think how the trial court addressed it, and I think how Plaintiff is thinking about it, is that merely raising those words changes the outcome. So just because Rotin still emphasized, it seems to me, that unconscionability is still a fact-driven analysis. And here there are no facts that this was procedurally or substantively unconscionable. So I believe even if this court is unwilling to reverse in total the trial court's denial, or any denial of the motion to compel arbitration, a reversal with instructions to conduct an evidentiary hearing, I think, would be the best way to deal with that. Was an evidentiary hearing requested in the trial court? By Plaintiff? No. Oh, by me either? No. Okay, and so hasn't that been waived? Isn't there a case law that says that if you don't request it in the trial court, the trial court doesn't have to conduct an evidentiary hearing, and you can't argue that on appeal? I do not know that, Your Honor, but that sounds accurate to me based off of the way that the logic sounds. But I still believe that the Rotin and then also the Supreme Court cases, both in Coinbase, Henry Schein, U-Haul, all clearly establish that when it's clearly an unmistakable delegation clause that the court has to stop there and enforce it. And I believe here we have a clear unmistakable delegation clause. But the trial court can deal with the issue of unconscionability. That's not delegated to the arbitrator, correct? That's a very tricky question that I don't think the U.S. Supreme Court cases necessarily address spot on, nor do I think Rotin does. Rotin effectively throws it and kicks the can down the road and says we'll decide this later. I believe that there are certain issues where the trial court can say there is no arbitration agreement and therefore we don't even look at the delegation provision. Or, for instance, in Coinbase where there were two contracts and they had to decide first which contract is applicable. Here the trial court found, just based off of its plain reading of the arbitration agreement, that it was unconscionable. And I don't think that's sufficient. I should say this. I don't think the facts supporting that unconscionability were there in the arbitration agreement. I think that this arbitration agreement was actually pretty fair in the way that it was drafted. And if this arbitration agreement is unfair, then I think almost all arbitration agreements would be deemed unconscionable.